IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LIZA D. ROSA-RIVERA, et al.,

    Plaintiffs,

        v.                          CIVIL NO. 09-1318 (CVR)

DORADO HEALTH, INC., et al.,

    Defendants.

**OPINION AND ORDER**

**INTRODUCTION**

Defendant Dorado Health, Inc., d/b/a Hospital Alejandro Otero López (hereafter "Dorado Health") filed a motion for summary judgment in regards to claims by plaintiffs Liza D. Rosa Rivera and Edgar Franqui Ramos, on their own and as parents of their minor child, for medical malpractice and damages upon a childbirth in the defendant hospital's facilities. (Docket No. 88). Defendant thereafter filed a supplemental motion with clarification of omissions as to record reference. (Docket No. 90). Co-defendant Dr. Joseph Capre-Febus (hereafter "Dr. Capre-Febus") filed a Motion of Joinder as to above summary judgment solely in regards to arguments that the Complaint is time-barred. (Docket No. 91).

The request for summary disposition submits plaintiffs' claim is time-barred for the injury sustained by the infant and the filing of the Complaint exceeded the one-year limitation period for torts actions in this jurisdiction. Additionally, co-defendant Dorado Health avers plaintiff Rosa-Rivera was under the care and treatment of Dr. Capre-Febus and Dr. Carlos González Camacho (hereafter Dr. Camacho") when she was admitted to

Dorado Health where these physicians held privileges but were not employees. The conduct attributed to Dorado Health as part of the medical malpractice alleged in the Complaint solely refers to the omission of an attending nurse in the delivery room to make a record notation that, during delivery of the infant, Dr. Capre-Febus used vacuum extraction. Since there is no evidence of causation between the nurse's omission and the injury that resulted from the alleged malpractice, co-defendant Dorado Health seeks summary adjudication for plaintiffs' lack of a cause of action under the relevant case law.

Plaintiffs filed their opposition to defendants' Motion for Summary Judgment with their statement of material facts. (Docket No. 111). Dorado Health then filed a response. (Docket No. 118).

## LEGAL DISCUSSION

**A. Time Barred.**

Plaintiffs filed their claims against the hospital facilities of Dorado Health and the attending private treating physicians at the time of birth of their child on August 14, 2000, for medical malpractice and resulting damages. An initial complaint was filed in June 25, 2007 under Civil No. 07-1552 which was dismissed on March 31, 2009, without prejudice. Thereafter, within the one-year period from said dismissal on April 1, 2009, plaintiffs filed their claims under the instant case Civil No. 09-1318.

In this case, co-defendant Dorado Health submits plaintiffs' claims should be time barred because of the delay in filing their claim from the time the parents should have known about the infant's injury. Dr. Joseph Capre-Febus joined co-defendant Dorado

Health's motion insofar as plaintiffs' claim being time-barred, but without submitting any statement of uncontested facts or making any reference to plaintiffs' statement in opposition. (Docket No. 91).

### 1. Defendant's Contested/Uncontested Issues of Fact.

Co-defendant Dorado Health submits as uncontested that plaintiff Rosa-Rivera gave birth to her son at the Dorado Health facilities on August 14, 2000, which delivery was attended by her physician Dr. Capre-Febus. The following day the infant was found with the bone of the arm separated from the shoulder and remained at the hospital for approximately seven days due to high bilirubin and to receive physical therapy to the right arm damage. The infant was discharged and referred for outpatient physical therapy. On August 2000, Rosa-Rivera visited Dr. Capre-Febus and Dr. González for post partum treatment. The infant continued to receive physical therapy and on April 13, 2006, was evaluated by a registered physical therapist. On June 22, 2006, the infant with his parents visited a pediatric neurologist and was diagnosed with Erb's Palsy, an injury on his right arm. (Deft's Uncontested ¶¶ 1-7).

### 2. Plaintiffs' Uncontested Issues of Fact.

Plaintiffs considered as uncontested above defendant's submission of events, with the clarification that Dr. Capre-Febus prevaricated as to the infant's condition informing plaintiff Rosa-Rivera the arm condition was temporary and he was going to be in excellent health. Dr. Capre-Febus also informed them the infant did not need additional treatment or surgical intervention. (Plaintiffs' Uncontested ¶6).

Plaintiffs submit that it was not until April 13, 2006, upon physical therapy, and a visit to a pediatric neurologist on June 26, 2006, their infant child was diagnosed with Erb's Palsy, an injury on the infant's right arm nerve and neurological damage possibly suffered upon vaginal delivery wherein vacuum extraction or forceps was used, which could have resulted in the injury to the infant's shoulder.

Where jurisdiction is based on diversity of citizenship, such as the present case, state statute of limitations apply. *See* Lareau v . Page, 39 F.3d 384 (1st Cir. 1994); Fidler v. Eastman Kodak Co., 714 F.3d 192, 196 91st Cir. 1983). As such, at first glance, defendants are correct in their submission the Complaint herein exceeds the one-year limitation period for tort actions, and thus malpractice, in Puerto Rico.[1]

However, Dr. Capre-Febus's motion to join co-defendant Dorado Health as to the statute of limitations is precluded by his alleged representations to the infant's parents that were dissuasive as the nature of the injury being possible result of medical malpractice. (Docket No. 91). In fact, Dr. Capre-Febus has not denied plaintiffs' uncontested facts as to having received information even after *post partum* treatment the injury suffered by the infant where his arm was separated from the shoulder was temporary and he was going to be in excellent health, needing no additional treatment or surgical intervention.

---

[1] The following prescribe in one (1) year:
> (1) Actions to recover or retain possession.
>
> (2) Actions to demand civil liability for grave insults or calumny, and for obligations arising from the fault or negligence mentioned in § 5141 of this title, from the time the aggrieved person had knowledge thereof.
>
> P.R. Laws Ann. tit. 31, § 5298.

Moreover, the doctrine of fraudulent concealment tolls a statute of limitation where the defendant raising the limitation defense has engaged in fraud or deliberate concealment of material facts related to the wrongdoing and plaintiffs failed to discover these facts within the normal limitation period despite exercise of due diligence. Demars v. General Dynamics Corp., 779 F.3d 95, 97 (1st Cir. 1985). Although the fraudulent concealment does not modify the need to exercise due diligence, we are herein dealing with a doctor-patient relationship, as well as omission on the nurse's record, as to the proceeding held during the vaginal delivery of the infant, upon which with the reassurance that the infant's condition was temporary and there was no need for treatment, placed plaintiffs in a position where the necessary information as to injury suffered by the infant was not disclosed to plaintiffs, but to the contrary, were misinformed by defendants who were in control of the information necessary as to the correlation between the infant's delivery and the injuries. *See* González v. United States, 284 F.3d 281 (1st Cir. 2002).

The Puerto Rico Supreme Court in a similar situation stated that, when plaintiffs who may have been victim of a tort are assuaged by assurances made by the person who caused the injury, said plaintiffs are not held responsible from failing to pursue their claims more aggressively. *See* Colón Prieto v. Geigel, 115 P.R. Decs. 232, 15 P.R. Offic. Trans. 313 (1984). More so, even knowledge that some injury may have occurred is not sufficient to disregard tolling. *See, e.g.,* Galarza v. Zagury, 739 F.2d 20, 24 (1st Cir. 1984) (stating that "knowledge of the author of the harm means more than an awareness of some ill effects resulting from an operation by a particular doctor"). If a plaintiff is not aware of some level

of reasonable likelihood of legal liability on the part of the person or entity that caused the injury, the statute of limitation will be tolled. In other words, a plaintiff must also have "knowledge of the author of the injury," a concept articulated at length in the Supreme Court of Puerto Rico's decision in Colón Prieto. *See* Rodríguez-Suris v. Montesinos, 123 F.3d 10, 13-14 (1st Cir. 1997).

Since federal courts sitting in diversity apply the choice of law rules of the forum state and when applying Puerto Rico law to substantive matters, Puerto Rico courts also apply Puerto Rico's statute of limitations, as well as the concomitant tolling provisions of those statutes, tolling of the one-year limitation is proper in this case. *See* Montalvo v. González-Amparo, 587 F.3d 43, 46 (1st Cir. 2009) (citing to Valedón Martínez v. Hosp. Presbiteriano de la Comunidad, Inc., 806 F.2d 1128, 1133 (1st Cir.1986)).

There is a shibboleth about medical records and the law that: "If it's not written, it didn't happen."[2] Henceforth, the information the nurse's record omitted is one crucial for plaintiffs' initial determination that some injury may have resulted because of the procedure used during delivery of the infant. This, together with their uncontested statement as to the treating physician's deception that the infant's condition would promptly be resolved with therapy, resulted in having no knowledge of the injury until the parents received more adequate diagnosis of the infant's condition. As such, the nurses'

---

[2] Trisha A. Wills, M.D. Thomas N. Thomas, M.D., BCFE, *Medical Records: What You See and Why,* 7 J. Forensic Document Examination 1, Fall, 1994.

record omission, that could be attributed to Dorado Health, together with Dr. Capre-Febus uncontested misinformation and/or representation to plaintiffs, does not allow these defendants to raise the time barred defense as discussed above.

Thus, both as to the hospital Dorado Health and Dr. Capre-Febus, their requests for summary adjudication for plaintiffs' cause of action being time barred rest on issues of material fact in controversy as to whether plaintiffs were put on notice as to the injury caused and/or the malpractice. Clearly, the state statute of limitation applicable to tort and to medical malpractice actions provide that fraud, concealment or misrepresentation of facts the discovery of the damages was prevented, may extend the prescription term. In this case, defendants may not avail themselves of plaintiffs' claims being time-barred and there are also genuine issues of disputed fact in controversy that would preclude summary adjudication on the issue.

**B. Lack of Causation.**

Even if not barred by timeliness, plaintiff Dorado Health seeks dismissal for lack of a causal relationship between the hospital nurse's failure to make a record notation that the infant was delivered by vacuum extraction and the injury suffered as a result of Dr. Capre-Febus' medical intervention during delivery. Dorado Health argues plaintiffs' claims against said co-defendant should be summarily dismissed for there is no causal relationship between the injury suffered by the infant during delivery by Dr. Capre-Febus. Dr. Capre-Febus was not an employee of the hospital but a private practitioner with privilege at said hospital facility and was selected by the infant's mother for private obstetrical services.

Dorado Health avers the alleged omission of a notation by the assisting nurse that vacuum extraction was used during delivery fails to meet, at least to said co-defendant, the causation as to the injury suffered.

### 1. Defendant's Undisputed Issues of Fact as to Causation.

Defendant Dorado Health submits that, as members of the medical staff with privileges at said institution, neither Dr. Capre-Febus nor Dr. González were employees of the hospital nor received salaries. Plaintiff Rosa-Rivera did not enter the hospital at the time of delivery through the emergency room but was rather admitted through the offices of Dr. Capre-Febus. (Deft's Undisputed ¶¶8-9).

Defendant Dorado Health argues lack of causation under the premise that aside from the fact of the alleged nurse's note omission, plaintiffs' expert opinion, Dr. Carmen Ortíz Roque, establishes lack of liability or involvement by said co-defendant Dorado Health as to the infant's injury. It is argued the expert indicated that, other than Dr. Capre-Febus, she cannot identify any person or individual that did anything wrong in this case. (Deft's Undisputed ¶ 10).

### 2. Plaintiffs' Uncontested Issue of Fact as to Causation.

Plaintiffs' opposition admits defendants' uncontested ¶¶ 8-9 insofar that Dr. Capre-Febus and Dr. González were not employees of said institution Dorado Health. As to their expert's opinion, same is clarified in that Dr. Ortíz Roque also expressed in her deposition that the baby's trauma to the shoulder and the fracture of the humerus "happened in the pelvis or it happened in the nursery." The expert did not discard that some trauma "—

maybe the baby was bumped against a nursery wall and no one wrote it down, no one documented there was an incident." (Plaintiffs' Contested ¶ 10; Exhibit 3, Dr. Ortíz Roque's depo., pp. 101-102).

Insofar as lack of annotation on the medical record, plaintiffs also submit their uncontested statements in that the nurse's note also omitted the presence of a family member in the delivery room, plaintiff Edgard Franqui, Rosa-Rivera's husband and the infant's father. (Plaintiffs' Uncontested ¶9; Ms. Sara Montalvo Díaz, Exhibit 1, pp. 78-79). The nurse who attended upon the infant after he was handed over by Dr. Capre-Febus was responsible to observe the baby's reflexes, check his arms, that he raises them and move them well. (Plaintiff's Uncontested ¶12; Exhibit 1, p. 68). If the baby does not lower or raise his arms, the nurse is supposed to write it down and the doctor is notified right away for it has to be reported to the nursery promptly for follow-up by a pediatrician, which was not done in the case. (*Id.*, p. 69). The hospital nurse's record failed to mention not only the use of vacuum extraction during delivery but also the decreased arm movement on the baby's right arm.

Plaintiffs' expert, Dr. Ortíz Roque, also testified that the lack of documentation in the delivery of the infant does not comply with basic medical standards. (Plaintiffs' Uncontested ¶15; Exhibit 7, Medical expert's report 8-31-2010).

The infant was evaluated on September of 2007 by Dr. Hess at the Shriners Hospital for Children, Tampa Hospital, obtained an MRI and discussed with plaintiffs the infant would benefit from surgery and then an anterior release right shoulder with latissimus dorsi

and teres major transfers was performed on March 4, 2008. (Plaintiffs' Uncontested ¶16; Exhibit 8, Discharge Summary, Shiners Hospital).

### 3. Defendant's Response.

Defendant Dorado Health, among others, filed a response objecting to above plaintiffs' statement, in particular Exhibit 7, for lack of authentication. It also argued the sole portion of plaintiff's expert that no one except for Dr. Capre-Febus would be liable for the injury to the infant. Still, plaintiffs' opposition presents their expert opinion was quoted incomplete for it also submits another possible cause of the infant's injury. As to the lack of proper medical record, defendant objects to Exhibit 7 in that it was not authenticated and if admitted should be considered applicable to another co-defendant and not to the hospital Dorado Health.

Plaintiffs' Exhibit 7 is an addendum by plaintiff's expert witness, Dr. Ortíz Roque, that defendants have also used to support their motion for summary judgment. Authentication is a straightforward concept requiring a "reasonable probability" that the item in dispute is what its proponent claims. United States v. Cruz, 352 F.3d 499, 506 (1st Cir.2003). The proponent "need not rule out all possibilities inconsistent with authenticity"; so long as the "evidence is sufficient to allow a reasonable person to believe the evidence is what it purports to be," it is left to the fact finder to determine what weight it deserves. United States v. Alicea-Cardoza, 132 F.3d 1, 4 (1st Cir. 1997).

Thus, regardless of any credibility issue that would not be applicable at the summary judgment stage, the addendum presents an expert witness' theory of liability and an expert

opinion in that lack of proper record keeping in the medical field is considered inconsistent with compliance under the standard of care. At this stage it is proper to admit the document as proposed by plaintiffs' opposition, which weight is to be determined thereafter.

Dorado Health first and foremost argues summary judgment on grounds the treating physician plaintiffs retained for delivery of their infant was not an employee of said hospital facilities but only retained privileges to practice therein. Under said premise, Dorado Health's arguments are supported by law and fact in that hospitals can not be held liable for exclusive negligence of unsalaried physicians who are independent contractors as to whom the hospital in no way advised patient to seek treatment from said physician, who was on its private staff and the patient's admissions to hospital were at instruction of physician. *See* Daniels-Recio v. Hospital Del Maestro, Inc., 109 F.3d 88 (1st Cir. 1997); *see also* Márquez Vega v. Martínez Rosado, 16 P.R. Offic. Trans. 487 (P.R.,1985) (dealing with liability when the physician is a hospital employee or considered the hospital selected their attending physicians when a patient enters the institution).[3]

Insofar as liability for the hospital's employees participation, Dorado Health argues there is lack of causation as to the injury suffered and its claim the only omission of the attending nurse was as to some notation on the record. To prevail on a medical malpractice

---

[3] The modern North American trend is to hold said institutions liable not only for the negligent acts of their medical staff and agents under the theory of *respondeat superior*, Comment, *The Hospital-Physician Relationship: Hospital Responsibility for Malpractice of Physicians*, 50 Wash. L. Rev. 385 (1975); 1 D.W. Louisell and H.Williams, *Medical Malpractice*, sec. 16.01, New York, Ed. Matthew Bender (1985).

Liza D. Rosa Rivera, et al. v. Dorado Health, Inc., et al.
Civil No. 09-1318 (CVR)
Opinion and Order
Page No. 12

claim under Puerto Rico law, a party must establish (1) the duty owed; (2) an act or omission transgressing that duty; and (3) a sufficient causal nexus between the breach and the harm. Marcano Rivera v. Turabo Medical Center Partnership, 415 F.3d 162 (1st Cir. 2005).

Plaintiffs have the burden to furnish proof of causation in medical malpractice action under Puerto Rico law. Martínez-Serrano v. Quality Health Services Of Puerto Rico, Inc., 568 F.3d 278 (1st Cir. 2009). *See* Cortés-Irizarry v. Corporación Insular de Seguros, 111 F.3d 184, 190 (1st Cir. 1997) ("Notwithstanding proof of both duty and breach, a plaintiff also must offer competent evidence of causation in a medical malpractice case."). A hospital facility is, however, liable for any malpractice due to negligence by the hospital's employees, as would be the attending nurse or practitioner in the delivery room, having the corresponding duties to attend to the infant after delivery and keep the corresponding hospital notes. Hospital's poor record keeping can give rise to inference of negligence in medical malpractice action. Valedón Martínez v. Hospital Presbiteriano de la Comunidad, Inc., 806 F.2d at 1128. Similarly, lack of reference in the medical record and/or proper notation which tends to indicate slackness in the keeping of the medical record reduces its usefulness in punctually informing about the execution of a physician's orders or as a source of reference for the evaluation of the treatment and care administered to the patient.[4] *See*

---

[4] Rodríguez Crespo v. Hernández, 21 P.R. Offic. Trans. 637 (1988).

Lama v. Borrás, 16 F.3d 473 (1st Cir. 1994) (sustaining jury malpractice verdict for plaintiffs met their burden of proof as to the allegation that the Hospital's substandard record-keeping procedures delayed the diagnosis and treatment). Liability was found to hospital for neurological damage sustained by infant during childbirth, caused in part by hospital's negligent monitoring for there was no way to know for certain what happened during the time frame that fetal tracings were missing, and circumstantial evidence, together with expert's testimony that child most probably suffered injuries during that time frame, supported finding that hospital's negligent monitoring during that period deprived doctor of the opportunity to intervene before the infant suffered permanent damage. Marcano Rivera v. Turabo Medical Center Partnership, 415 F.3d at 171.

In the present case, plaintiffs have alleged medical malpractice as to defendant Dorado Health. Plaintiffs' medical expert has indicated the possibility the injury could have taken place also at the nursery, as well as that failure to keep proper medical records by hospital nursing personnel is inconsistent with proper medical practices. In medical malpractice cases, plaintiffs can establish causation through expert testimony. A fact finder in medical malpractice case is entitled to weight the credibility of an expert's testimony. *See* Lama v. Borrás, 16 F.3d at 478; *see also* Heddinger v. Ashford Memorial Community Hosp., 734 F.2d 81 (1st Cir. 1984) stating that, although the delay in treatment was considered by one expert as not contributing to the impairment suffered, the jury was entitled to make up its own mind.

Liza D. Rosa Rivera, et al. v. Dorado Health, Inc., et al.
Civil No. 09-1318 (CVR)
Opinion and Order
Page No. 14

As such, summary judgment in the present case is not appropriate.[5]

CONCLUSION

In view of the foregoing, defendant Dorado Health's request for summary judgment is DENIED. (Docket No. 88). Likewise, co-defendant Dr. Capre-Febus' Motion of Joinder as to the Complaint being time-barred is DENIED. (Docket No. 91).

IT IS SO ORDERED.

San Juan, Puerto Rico, this 29th of June of 2012.

                                            S/ CAMILLE L. VELEZ-RIVE
                                            CAMILLE L. VÉLEZ-RIVE
                                            UNITED STATES MAGISTRATE JUDGE

---

[5] *See* Cortés-Irizarry v. Corporación Insular De Seguros, 111 F.3d at 191. Plaintiffs in a medical malpractice suit need not prove a causal connection with mathematical accuracy nor eliminate all other possible causes of damage (*citing* Cruz Rodríguez v. Corporación de Servicios del Centro Médico, 113 P.R. Dec. 719, 744, *translated in* 13 P.R. Sup.Ct. Off'l Trans. 931, 960–61 (1983)).