IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LIZA D. ROSA-RIVERA et al.,

Plaintiffs,

v.                                    CIVIL NO. 09-1318 (CVR)

DORADO HEALTH et al.,

Defendants.

## OPINION AND ORDER

## INTRODUCTION

Plaintiffs Liza D. Rosa-Rivera and Edgar Franqui-Ramos, on their own and as parents of their minor child Fernando A. Franqui-Rosa (hereafter "Fernando"), filed the instant civil action against Dorado Health, Inc. d/b/a Hospital Alejandro Otero López (hereafter "Dorado Health"), Dr. Joseph Capre-Febus (hereafter "Dr. Capre-Febus") and Dr. Carlos González-Camacho[1] for medical malpractice and damages upon a childbirth in the defendant hospital's facilities.

On October 31, 2012, after sixteen days of jury trial, the jury trial in this case concluded with a verdict in plaintiffs' favor. The jury found co-defendant Dr. Capre-Febus and Dorado Health were negligent in connection with Fernando. The jury found by a preponderance of the evidence that any negligence on the part of Dr. Capre-Febus was the proximate cause of Fernando's impairment. The jury did not find by preponderance of the evidence that any negligence on the part of Dorado Health was the proximate cause of

---

[1] On October 4, 2012, pursuant to plaintiffs' request, partial judgment was entered dismissing with prejudice all claims filed against Dr. Carlos González-Camacho.  (Docket No. 155).

Liza D. Rosa-Rivera, et al v. Dorado Health, Inc., et al
Civil No. 09-1318 (CVR)
Opinion and Order
Page 2

Fernando's impairment.  The jury found the total amount of damages, if any, sustained by Fernando was $100,000.00 for physical impairment, $100,000.00 for pain and suffering and $607,500.00 for reduction in potential income.  (Docket No. 190).

On October 31, 2012, judgment was entered.  (Docket No. 191).

On November 2, 2012, an Opinion and Order was issued in which this Magistrate Judge expanded in writing the verbal ruling made at the jury trial granting in part and denying in part defendants' motions for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure as to the claims filed under Article 1802 and 1803 of the Puerto Rico Civil Code.  After plaintiffs presented all their evidence and rested their case in the above jury trial, defendants Dr. Capre-Febus and Dorado Health presented oral motions for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure.  In essence, defendants argued plaintiffs did not meet their burden of establishing a medical malpractice case under Articles 1802 and 1803 of the Puerto Rico Civil Code by preponderance of the evidence.  Defendants claimed that in cases of professional medical liability there is a presumption the physician exercised a degree of reasonable care and the administration of the treatment to the patient was adequate. Defendants argued there is no doubt minor Fernando suffers from Erb's palsy but the issue is the cause of the injury.  Fernando's injury was not caused by any negligent act of Dr. Capre-Febus or the hospital.  As such, the causal nexus between the alleged negligent act and the damage is lacking.  In addition, defendants averred the claims of the adult plaintiffs (Liza Rosa-Rivera and Edgardo Franqui-Ramos) were time barred and had to be dismissed.

In sum, after considering the evidence presented by plaintiffs in their case in chief, the Rule 50 (a) motions were granted as to all claims filed by the adult plaintiffs Liza Rosa-Rivera and Edgardo Franqui-Ramos, for their claims were time barred for the injury sustained by the infant and the filing of the complaint exceeded the one year limitation period for torts actions in this jurisdiction. The Rule 50 (a) motions as to lack of causation between the actions of the hospital and/or Dr. Capre-Febus and the minor's injury were denied as to all claims filed by minor Fernando. (Docket No. 173). All the findings made orally and in said Opinion and Order are incorporated herein by reference and are made part of this Opinion and Order.

Thereafter, plaintiffs and Dr. Capre-Febus filed post-trial motions for new trial, amendment of judgment and for judgment as a matter of law under FRCP 50 (b) which we summarize herein below.

**A.      Post-Trial Motion by Plaintiffs and Dorado Health's Opposition.**

On November 28, 2012, plaintiffs filed a "Motion for New Trial and to Amend Judgment under FRCP 59." Plaintiffs request the judgment entered in this case be amended to conform to the jury's verdict inasmuch as the judgment indicated there was no negligence on the part of Dorado Health when the jury found negligence on behalf of Dorado Health. To this effect, plaintiffs contend the jury verdict was inconsistent inasmuch as it found Dorado Health negligent but in turn found that Dorado Health's actions were not the proximate cause of Fernando's impairment. In addition, plaintiffs aver the court erred in not allowing plaintiffs' counsel to pose leading questions on direct examination to

Sara Montalvo (hereafter "Montalvo"), nurse employed at the hospital, who plaintiffs considered an adverse witness or a witness identified with the opposing party. As such, plaintiffs claim they were not able to properly examine Montalvo to show she was not properly trained to manage a shoulder dystocia or assist in this type of emergency. Finally, plaintiffs contend the court erred in failing to adopt their proposed Instruction 16. (Docket No. 195).

After requesting several extensions of time which were granted by the Court, on February 8, 2013, Dorado Health filed its Opposition to plaintiffs' Motion for New Trial and to Amend Judgment under Federal Rule of Civil Procedure 59. Dorado Health claims that the fact that the jury found Dorado Health negligent but did not find that said negligence was the proximate cause of Fernando's impairment is not grounds to amend the judgment because in order for Dorado Health to be liable all three requirements of a *prima facie* case of malpractice have to be proven. In addition, Dorado Health asserts the grounds raised by plaintiffs for a new trial are without merit. At all times, Montalvo was cooperative and was not hostile or unresponsive. Dorado Health claims plaintiffs improperly raised the issue as to Instruction 16 inasmuch as it is unknown to which instruction plaintiffs are referring to and plaintiffs never objected to the non-inclusion of said instruction. (Docket No. 216).

**B.     Post-Trial Motion by Dr. Capre-Febus and Plaintiffs' Opposition**.

On November 28, 2012, Dr. Capre-Febus filed a "Motion for Judgment as a Matter of Law pursuant to FRCP 50(b) or in the Alternative for New Trial pursuant to FRCP 59(a)

with Memorandum in support in compliance with Local Rule 7(a)." In essence, Dr. Capre-Febus claims the special verdict form used in the instant case is contrary to law and, as such, the verdict and judgment entered must be set aside and judgment as a matter of law be entered dismissing this action with prejudice pursuant to Federal Rule of Civil Procedure 50(b) or in the alternative a new trial must be ordered. Dr. Capre-Febus avers the admissibility of plaintiff's expert reports was improper; there is no basis in the evidence for a finding of negligence by Dr. Capre-Febus nor for a finding of proximate cause; the jury was contaminated by a juror who was excused; the verdict form was contrary to law; a valid verdict was issued in which the jury failed to award plaintiff Fernando any damages; plaintiff Fernando was no entitled to a reduction of loss of earnings and, as such, the economic damages' theory and the testimony of expert witness Juan A. Villeta-Trigo (hereafter "Mr. Villeta-Trigo") was incorrect; plaintiffs' counsel comments in closing argument making reference to a "conspiracy theory" were improper. (Docket No. 196).

On January 31, 2013, after requesting several extensions of time which were granted by the Court, plaintiffs filed their Opposition to Dr. Capre-Febus' Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(b) or in the alternative for New Trial. Plaintiffs contend Dr. Capre-Febus did not present any case law in support of his position as to the admissibility of plaintiffs' expert witness reports. Plaintiffs also aver Dr. Capre-Febus deviated from the standard of care and this was proven at trial. The Court took appropriate precautions as to the alleged contaminated juror and all the parties, including Dr. Capre-Febus, agreed to the procedure which was used by the Court to attend

this situation.  The Court also properly addressed, after discussing the matter with counsel, the jury verdict in which no damages were written down by the jury.  An instruction was given to the jury after the same was discussed with all counsel.  Moreover, the economic damages assessment was correct and the scenario presented by Dr. Capre-Febus as to the closing arguments is not real.  (Docket No. 213).

We now address these post trial motions individually herein below.

## ANALYSIS

**A.      Plaintiffs' Motion to Amend Judgment under Federal Rule of Civil Procedure 59.**

Federal Rule of Civil Procedure 59 (e) requires that a motion to alter or amend judgment must be filed no later than 28 days after the entry of judgment.  Plaintiffs' motion to amend judgment in the instant case was timely filed.

Pursuant to FRCP 59, a party may ask a Court "to amend its judgment based on new discovered material evidence or because the Court committed a manifest error of law or fact." National Metal Finishing Co., v. Barclays American, 899 F.2d 119, 124 (1st Cir. 1990).

Plaintiffs request the judgment entered in this case be amended to conform to the jury's verdict inasmuch as the judgment indicated there was no negligence on the part of Dorado Health when the jury found negligence on behalf of Dorado Health.   However, the manner in which plaintiffs request the judgment to be amended would entail imposing liability on Dorado Health and requiring Dorado Health to compensate plaintiffs along with Dr. Capre-Febus, which is against the jury verdict.  We explain.

Liza D. Rosa-Rivera, et al v. Dorado Health, Inc., et al
Civil No. 09-1318 (CVR)
Opinion and Order
Page 7

A review of the jury verdict in the instant case shows that the jury found, by preponderance of the evidence, that Dorado Health was negligent in connection with Fernando.  See Docket No. 190.  However, we agree with plaintiffs that the Judgment entered at Docket No. 191 inadvertently stated there was no negligence on the part of Dorado Health.  See Docket No. 191.  As such, an Amended Judgment will be entered clarifying Dorado Health was negligent as follows:

> Having the jury in this case found by a preponderance of the evidence that co-defendant Dr. Joseph Capre-Febus and co-defendant Dorado Health d/b/a Alejandro Otero López Hospital Inc. were negligent in connection with Fernando A. Franqui-Rosa, and that negligence on the part of Dr. Joseph Capre-Febus was the proximate cause of Fernando A. Franqui-Rosa's impairment, the total damages in the amount $807,500.00, are to be apportioned as follows:
>
> 1. Physical Impairment:          $100,000.00
>
> 2. Pain and suffering:           $100,000.00
>
> 3. Reduction in potential income:  $607,500.00
>
> ORDERED AND ADJUDGED that co-defendant Dr. Capre-Febus compensates co-plaintiff Fernando A. Franqui-Ramos in the total amount of $807,500.00
>
> IT IS SO ORDERED.

It is of upmost importance to clarify that the jury verdict and the above amendment to the judgment in no way makes Dorado Health liable for medical malpractice in this case. The jury found that Dorado Health was negligent but did not find that its negligence was the proximate cause of Fernando's impairment.  As such, the elements necessary to make Dorado Health liable for a medical malpractice case were not found as proven by the jury

Liza D. Rosa-Rivera, et al v. Dorado Health, Inc., et al
Civil No. 09-1318 (CVR)
Opinion and Order
Page 8

in this case.[2] Thus, in accordance with the jury verdict, Dorado Health is not liable to

plaintiff and does not need to compensate plaintiff Fernando for the damages awarded. Said

jury verdict is not inconsistent as more fully discussed below.

As such, plaintiffs' request to amend judgment is GRANTED IN PART AND DENIED

IN PART, consonant with the above.

**B.     Plaintiffs' Motion under Federal Rule of Civil Procedure 59(a) for New**

**Trial.**

Federal Rule of Civil Procedure 59(a) allows the Court to order a new trial, upon a

party's or its own motion, "for any of the reasons for which new trials have heretofore been

granted." Federal Rule of Civil Procedure 59(a); *see also* Taber Partners I v. Isurance Corp.

of North America Inc., 917 F.Supp. 112, 116 (D. Puerto Rico 1996).

The motion for a new trial may invoke the discretion of the court in so far as it is

bottomed on the claim that the verdict is against the weight of the evidence, that the

damages are excessive, or that, for other reasons, the trial was not fair to the party moving;

and may raise questions of law arising out of the alleged substantial errors in admission or

rejection of evidence or instructions to the jury.  Montgomery Ward & Co. v. Duncan, 311

U.S. 243, 251, 61 S.Ct. 189 (1940). The Court may grant a new trial although it has denied

the entry of judgment as a matter of law under Federal Rule of Civil Procedure 50, China

Resource Products (U.S.A.) Ltd. v. Fayda Intern., Inc., 856 F.Supp. 856, 862 (D. Del.1994),

---

[2] As recognized by plaintiffs, in order to prevail in a medical malpractice case under Puerto Rico's law, a party must establish: 1) the duty owed; 2) an act or omission transgressing that duty and; 3) a sufficient causal nexus between the breach and the harm.  Marcano Rivera v. Turabo Medical Center Partnership, 415 F.3d 162, 167 (1st Cir. 2005). (Docket No. 195, pp. 4-5).

or even when substantial evidence supports the jury's verdict, <u>Lama v. Borras</u>, 16 F.3d 473, 477 (1st Cir. 1994).  Instead, a new trial "should only be granted where a 'miscarriage of justice would result if the verdict were to stand,' the verdict 'cries out to be overturned,' or where the verdict 'shocks our conscience.' " <u>Smith v. Delaware Bay Launch Service, Inc.</u>, 842 F.Supp. 770, 778 (D. Del.1994) (quoting <u>Cudone v. Gehret</u>, 828 F.Supp. 267, 269 (D. Del.1993)).

### 1.    Jury Verdict Was Inconsistent.

Plaintiffs request a new trial because the jury verdict was inconsistent inasmuch as it found Dorado Health negligent but in turn found that Dorado Health's actions were not the proximate cause of Fernando's impairment.  Dorado Health disagrees and claims that the fact that the jury found Dorado Health negligent but did not find that its negligence was the proximate cause of Fernando's impairment is not grounds for a new trial nor the verdict was inconsistent because plaintiffs failed to prove the elements necessary for a cause of action for medical malpractice.

We agree with Dorado Health that the verdict form in this case included all the elements of the cause of action and, in order to obtain a judgment against Dorado Health, the jury had to answer all the parts of the verdict form including the negligence, proximate cause and damages, as guided by the Court in the jury instructions.  The jury did not find

Liza D. Rosa-Rivera, et al v. Dorado Health, Inc., et al
Civil No. 09-1318 (CVR)
Opinion and Order
Page 10

that any negligence of behalf of Dorado Health was the proximate cause of Fernando's impairment.  (See Docket No. 190).  As such, Dorado Health is not liable in this case and a new trial on these grounds is not warranted.[3]

Moreover, as properly raised by Dorado Health, when the jury verdict was returned, plaintiffs did not raise that the verdict was inconsistent.  As such, this matter is deemed waived.

## 2.     Leading Questions Were Not Allowed to be Posed to Montalvo on Direct Examination.

In addition, plaintiffs aver the Court erred in not allowing plaintiffs' counsel to pose leading questions on direct examination to Montalvo, nurse employed at the hospital, who plaintiffs considered an adverse witness or a witness identified with the opposing party. As such, plaintiffs claim they were not able to properly examine Montalvo to show she was not properly trained to manage a shoulder dystocia or assist in this type of emergency.

Federal Rule of Evidence 611(c) provides:

Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony. Ordinarily leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.

Rule 611(c), however, does not give the calling party an absolute right to ask leading questions even if a witness is identified with an adverse party. SeeFed.R.Evid. 611(a) & (c).

---

[3] We note that a trial judge is not required to enter supporting findings of facts and conclusions of law when granting or denying a new-trial motion.  *See* Jennings v. Jones, 587 F.3d 430 (1ˢᵗ Cir. 2009).

Jaffe v. Bank of America, N.A, 395 Fed. Appx. 583 (11th Cir. 2010); Robinson v. R.J. Reynolds Tobacco Co., 86 Fed. Appx. 73 (6th Cir. 2004).

"[T]he use of leading questions '… must be left to the sound discretion of the trial judge who sees the witness and can, therefore, determine in the interest of truth and justice whether the circumstances justify leading questions to be propounded to a witness by the party producing him.' " United States v. Mulinelli-Navas, 111 F.3d 983, 987 (1st Cir. 1997); United States v. Brown, 603 F.2d 1022, 1025 (1st Cir. 1979).

A review of the undersigned's notes and the best recollection of Montalvo's demeanor and testimony, reveal a witness who was, at all times, cooperative, not hostile, and responsive. Montalvo was not antagonistic nor evasive. As such, and within the discretion of the undersigned, leading questions to Montalvo were not allowed.

We note that the fact that a witness is identified with an adverse party does not make it an automatic adverse witness. In addition, the fact that Montalvo did not respond the questions in the manner plaintiffs wished she did is not grounds either to allow leading questions on direct examination.

Plaintiffs rely on the case of Ellis v. City of Chicago, 667 F.2d 606 (7th Cir. 1981) for the proposition that the Federal Rules of Evidence permit the use of leading questions on direct of witnesses automatically regarded as adverse, and therefore subject to interrogation by leading questions without further showing of actual hostility. (Emphasis in the original).

However, a review of Ellis, shows that plaintiffs' proposition is incorrect. The ruling of Ellis, 667 F. 2d at 613, as applicable to this case, is as follows:

In essence, Rule 611(c) codifies the traditional mode of dealing with leading questions. It acknowledges that they are generally undesirable on direct examination, that they are usually permissible on cross-examination, and that there are exceptions to both of these propositions. Although not explicitly stated, the rule is consistent with what has long been the law-that in the use of leading questions "much must be left to the sound discretion of the trial judge who sees the witness and can, therefore, determine in the interest of truth and justice whether the circumstances justify leading questions to be propounded to a witness by the party producing them." St. Clair v. United States, 154 U.S. 134, 14 S.Ct. 1002, 38 L.Ed. 936 (1894). Such a decision will not be reversed absent a clear showing of prejudice to the complaining party. Riverside Insurance Co. v. Smith, 628 F.2d 1002, 1009 (7th Cir. 1980); United States v. O'Brien, 618 F.2d 1234, 1242 (7th Cir. 1980).

Plaintiffs limit their argument that Montalvo was at the delivery room and is a witness identified with an adverse party, she omitted critical information from the nurses' notes, did not receive any special education in shoulder dystocia cases nor was trained by Dorado Health to manage an emergency. As such, plaintiffs claim they were not able to achieve their objectives of ascertaining the truth and bring justice. These assertions fall short of a clear showing of prejudice.

Hence, a new trial on above grounds is unwarranted.

### 3.      Failure to Adopt Plaintiffs' Proposed Instruction No. 16.

Plaintiffs generally contend, without further explanation, that a new trial is warranted because plaintiffs' proposed instruction No. 16 at Docket No. 157 was not adopted by the Court.

As reflected in the minutes of the Jury Trial of October 30, 2012, the undersigned met with counsel for the parties, outside the presence of the jury, to discuss the jury instructions to be given to the jury. (Docket No. 185). As argued in opposition by Dorado

Health, the majority of plaintiffs' omitted jury instruction was incorporated into other jury instructions given to the jury.

The undersigned had the benefit of reviewing the recording of the jury trial and in essence the recording shows that ALL the jury instructions were stipulated except Instruction No. 16 as proposed by plaintiffs at Docket No. 157.  The recording shows the instructions which were going to be given to the jury were discussed on October 30, 2012 with counsel prior to providing them to the jury the next day.  At that time, counsel for Dr. Capre-Febus objected at length the instruction proposed by plaintiffs at Instruction No. 16 under Márquez Vega v. Martínez Rosado, 116 DPR 397, 409-410 (1985) because the same was irrelevant and not applicable pursuant to the evidence presented at the jury trial.  The evidence presented at trial did not include evidence as to the rules and regulations of the hospital as to extending privileges to Dr. Capre-Febus.  As such, defendants suggested another instruction including the general ruling of Márquez-Vega.  Counsel for plaintiffs then argued Instruction No. 16 was necessary and asserted evidence was presented to the jury as to privileges being awarded to Dr. Capre-Febus who had eight prior malpractice cases and the hospital did not take any action against him or remove his privileges.[4]

The recording shows that, after considering the positions and the arguments of counsel for the parties and based on the evidence presented at trial, the undersigned decided, within her discretion, not to give to the jury Instruction No. 16 as proposed by

---

[4] Dorado Health argued in opposition that plaintiffs did not object to the non-inclusion of the instruction at issue prior to the instructions being provided to the jury. However, the recording of the jury trial shows plaintiffs argued in favor of their proposed Instruction No. 16 and against its non-inclusion.

plaintiffs and instead decided to give to the jury Instruction No. 19 (Docket No. 188) as to the vicarious responsibility of hospitals and Instruction No. 20 under Márquez-Vega which cover in essence the content of plaintiffs' proposed Instruction No. 16. The undersigned made her decision to conform the instruction to the evidence presented at trial. The evidence presented at trial did not include evidence related to the privileges of Dr. Capre-Febus at the hospital and the matter was not even claimed. The fact that Dr. Capre-Febus has other medical malpractice cases does not make him liable in this case.

Finally, plaintiffs have not alleged that this omission constitutes an error that may warrant a new trial.

Accordingly, a new trial is not warranted under this contention.

## C.   Defendant Dr. Capre-Febus' Renewed Motion under Federal Rule of Civil Procedure 50(b) for Judgment as a Matter of Law.

Co-defendant Dr. Capre-Febus renewed his Rule 50 motion after the conclusion of his evidence and the same was denied. (Docket No. 185). Co-defendant Dr. Capre-Febus has now renewed his Motion under Rule 50 for judgment as a matter of law after trial under Federal Rule of Civil Procedure 50 (b).

Rule 50 (b) states:

(b) Renewing Motion for Judgment After Trial; Alternative Motion for New Trial. If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment-and may alternatively request a new trial or join a motion for a new trial under Rule 59. In ruling on a renewed motion, the court may:

(1) if a verdict was returned:

(A) allow the judgment to stand,

(B) order a new trial, or

(C) direct entry of judgment as a matter of law; or ...

In ruling upon this motion it has been held that "[a] court is without authority to set aside a jury verdict and direct the entry of a contrary verdict unless the evidence points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party." Keisling v. SER-Jobs for Progress, Inc., 19 F.3d 755, 759-60 (1st Cir. 1994). Moreover, in determining if the standard has been met, the court is required to examine the evidence in the light most favorable to the non-moving party, and the non-moving party is entitled to "the benefit of all inferences which the evidence fairly supports, even though contrary inferences might reasonably be drawn." Id. at 760 (quoting Cochrane v. Quattrocchi, 949 F.2d 11 (1st Cir. 1991)).

The standard for setting aside a jury verdict pursuant to Fed.R.Civ.P. 50(b) is a stringent one: the Court must deny the motion for judgment as a matter of law unless the evidence, together with all reasonable inferences in favor of the verdict, could lead a reasonable person to only one conclusion, namely, that the there is a total failure of evidence to prove plaintiff's case. Mayo v. Schooner Capital Corp., 825 F.2d 566, 568 (1st Cir. 1987); Lama v. Borrás, 16 F.3d 473, 477 (1st Cir. 1994). In reviewing the record, the Court will evaluate neither the credibility of the witnesses nor the weight of the evidence. Santiago-Negrón v. Castro-Dávila, 865 F.2d 431, 445 (1st Cir. 1989).

Liza D. Rosa-Rivera, et al v. Dorado Health, Inc., et al
Civil No. 09-1318 (CVR)
Opinion and Order
Page 16

Co-defendant Dr. Capre-Febus moves the Court to set aside the jury verdict and that judgment as a matter of law be entered in favor of Dr. Capre-Febus dismissing the case with prejudice pursuant to FRCP 50(b). In the alternative, Dr. Capre-Febus requests judgment be set aside and vacated and that a new trial be ordered. Dr. Capre-Febus' request in based on the following grounds:

1.  The admissibility of plaintiffs' expert reports was improper.

2.  There is no basis in the evidence for a finding of negligence by Dr. Capre-Febus.

3.  There is no basis in the evidence for a finding of proximate cause.

4.  The Jury was Contaminated.

5.  The Verdict Form was Improper.

6.  A Valid Verdict was Issued.

7.  The Economic Damages - The Reduction in the Potential Capacity to Earn Income Theory.

8.  Plaintiffs' Counsel Comments in Closing Argument.

Upon due consideration of the testimonial and documentary evidence presented at trial, and making all reasonable inferences in favor of the verdict, the Court finds the jury verdict is supported by the evidence, and hence **DENIES** the Rule 50(b) Motion, to the extent that the jury verdict must stand. We take into account that co-defendant Dr. Capre-Febus raised several defenses which were the object of many of the cross-examinations of plaintiffs and their witnesses, and notwithstanding the details of such

Liza D. Rosa-Rivera, et al v. Dorado Health, Inc., et al
Civil No. 09-1318 (CVR)
Opinion and Order
Page 17

defenses, which were also presented to the jury after plaintiff rested, the jury found for

plaintiffs.  The previous ruling on the motion brought pursuant to Rule 50(a), Federal

Rules of Civil Procedure, is herein adopted and incorporated by reference particularly

after the jury individually and meticulously considered each claim. (Docket No. 173).  The

Court will not invade the jury's province to substitute its credibility determinations and

reach an alternative judgment. Reviewing the undersigned's notes, defense arguments and

the jury verdict, we cannot conclude the defense is entitled to judgment as a matter of law.

As such, points two and three above mentioned as raised by Dr. Capre-Febus and related

to the finding of negligence on his behalf and the same being the proximate cause need not

be discussed further.

Nonetheless, the Court will briefly address the other issues that fall outside the

purview of the verdict on negligence and damages rendered.

**1.      The admissibility of plaintiffs' expert reports was improper.**

Defendants raised a standing objection as to the admission of plaintiffs' expert

witness reports under Federal Rule of Evidence 403 because their admission would cause

unfair prejudice and would confuse and mislead the jury.  Also, defendants' objection was

raised under Federal Rule of Evidence 703 because it was hearsay.

However, after conducting the proper balancing under Federal Rule of Evidence

403 and under Federal Rule of Evidence 703 and within the discretion of the

undersigned, the expert reports of plaintiffs' expert witnesses were admitted into evidence

and the reasons for their admission were placed by the undersigned on the record and need not be rehashed at this time.[5]

In view of the above, Dr. Capre-Febus' request for dismissal under Rule 50 (b) and/or for new trial under above grounds is unwarranted.

## 2.    **The Jury was Contaminated**.

The record shows that on October 29, 2012[6], the Court received a letter from a juror requesting she be excused from further jury duty and explaining the reasons for her request.  The Court met with the parties and their attorneys in open court to discuss the letter.  After discussing the same, the Court granted the parties' request that all the jury members be questioned as to possible jury contamination.  The questions to be posed to the jury members individually were discussed at length with counsel and the language of the questions was agreed upon by all counsel.  Each juror was them individually questioned by the Court in the courtroom in the presence of counsel.  After each juror was questioned, he/she was placed in a separate room from the other jurors to prevent any contamination.  The juror who requested to be relieved from jury duty was questioned last to safeguard the purity of the process.

After conducting the inquiry of all jury members, it was determined that the other

---

[5]  As a matter of fact, defendant Dr. Capre-Febus presented as his expert witness Dr. Alberto De la Vega-Pujol and proffered his expert witness report into evidence and the same was admitted.  An observation was made by the undersigned that the request for the admission of defendants' expert witness report debilitated the standing objection defendants had made for the admission of plaintiffs' expert witness reports because "what is good for the goose is good for the gander."

[6] See Minutes at Docket No. 184.

jurors were not contaminated because the implicated juror did not share her views or opinion of the case with the other jurors.  The parties agreed to excuse the juror who wrote the letter and to continue with the jury trial with the remaining jurors.  The jurors who remained were never made aware of the content of the letter or the reasons as to why the juror was excused. No evidence to the contrary has been presented by Dr. Capre-Febus but bare assertions of counsel.

As such, and having counsel for Dr. Capre-Febus actively participated in the manner in which this situation was handled by the Court, makes this request without merit.

### 3.    The Verdict Form was Improper and a Valid Verdict was Issued.

The Court requested the parties to submit a joint verdict form which the parties were not able to provide.  As such, the Court heard the arguments of the parties in favor and against the Court's proposed verdict form which in essence incorporated the questions proposed by the parties. The objections of the parties to the final verdict form and the reasons for the Court to use said form are on the record and need not be restated here.

After the jury retired to deliberate, a jury note #4 was received in which the jury requested question no. 5 of the verdict form be clarified in the sense that if each line had to be filed out.  The undersigned met with counsel, discussed the content of the note and answered the note to the jury with "no."  (Docket No. 186).

Then, note #5 was received in which the jury informed it had reached a verdict. The jury was brought into the courtroom and the verdict form was read for the record. Question no. 5 of the verdict form was left blank, therefore the verdict was incomplete. Counsel for the parties discussed for the record, and outside the presence of the jury, their positions and interpretations as to what the jury meant by leaving in blank Question no. 5. The manner to handle the situation was discussed at length with counsel, their input was received and incorporated to the additional instruction. The additional instruction, which was eventually given to the jury, was informed to counsel for the parties and there was an agreement that the same gave guidance to the jury to clarify its intention. Said additional instruction which was read to the jury read as follows:

> To the members of the jury, questions one through four of the verdict form were already answered by the jury. Question no. 5 in the verdict form has to be answered by the jury and cannot be left in blank as submitted. You are instructed to go back to the jury room and answer Question no. 5 indicating a dollar amount, if any, starting with zero to any amount for each of the three lines.

Then, the jury submitted a complete verdict form finding damages in the amount of $807,500 for plaintiff.

Defendant Capre-Febus argues, without any case law or legal grounds in support thereof, that the incomplete verdict form was valid. Dr. Capre-Febus avers the jury originally reached a verdict deciding against awarding damages to plaintiffs and, it is not until after the Court gave the additional instruction, that the jury felt obligated to make a damages award. Dr. Capre-Febus' contention is without merit. The additional

instruction was carefully crafted by the undersigned with the aid of all counsel and their input was incorporated into the final version of the additional instruction.  The additional instruction clearly asked the jury to answer Question no. 5 "indicating a dollar amount**, if any, starting with zero to any amount for each of the three lines**." As such, if the intention of the jury was not to award damages to plaintiffs, the jury should have answered the three lines with " 0" or "zero."  However, the jury clearly awarded damages by filling out a specific amount in each of the three lines for the damages.

The record shows the Court took the appropriate precautions and all the parties, including Dr. Capre-Febus, were satisfied with the procedure undertaken by the Court and no objections were raised.

In view of the foregoing, Dr. Capre-Febus' request for dismissal under Rule 50 (b) and/or for new trial under above grounds is unwarranted.

### 4. The Economic Damages - The Reduction in the Potential Capacity to Earn Income Theory.

On October 19, 2012, plaintiffs called Mr. Villeta-Trigo as their expert witness.[7] Counsel for defendants conducted a voire dire before Mr. Villeta-Trigo was qualified as an expert witness.  The jury was then excused an a *Daubert* hearing was conducted. The witness was examined and cross-examined by counsel.  The ruling as to the qualification of Mr. Villeta-Trigo as an expert was left in abeyance.  (Docket No. 179). The next day, the

---

[7] The testimony of Mr. Villeta-Trigo was the object of a motion *in limine* which was denied prior to trial.

Liza D. Rosa-Rivera, et al v. Dorado Health, Inc., et al
Civil No. 09-1318 (CVR)
Opinion and Order
Page 22

Court informed the parties that after reviewing Mr. Villeta-Trigo's report, his curriculum vitae, experience and the answers he provided to the Court outside the presence of the jury, the *Daubert* issue was overcome and he was allowed to testify as an expert witness in economics.

This matter was extensively argued by counsel for defendants prior and during the trial.  No new evidence has been proffered at this stage for this Magistrate Judge to deviate from her original ruling made under *Daubert* as to Mr. Villeta-Trigo being qualified as an economic expert and rendering his opinion on the reduction of the potential capacity to earn income theory.  It was for the jury to access credibility and to decide whether or not to believe Mr. Villeta-Trigo's theory and testimony.

As such, Dr. Capre-Febus' request for dismissal under Rule 50 (b) and/or a new trial is not warranted under this argument.

### 5.   Plaintiffs' Counsel Comments in Closing Argument.

Dr. Capre-Febus claims in passing that the comments by plaintiffs' counsel, over defendant's  objections, during closing argument as to a "pact of silence" as well as reference to his personal opinion[8] warrant a new trial.

The undersigned heard the recording of the complete closing statement by counsel for plaintiff on October 31, 2012 and plaintiffs' counsel made a single comment to a "pact of silence" between Dr. Capre-Febus and the hospital.  This comment was an isolated

---

[8] Defendant Dr. Capre-Febus does not make specific reference to the instances in which he believes plaintiffs' counsel expressed his personal opinion to the jury in his closing argument.  We are not willing to venture as to what instances defendant is referring to.  As such, the Court is not in a position to consider this argument.

Liza D. Rosa-Rivera, et al v. Dorado Health, Inc., et al
Civil No. 09-1318 (CVR)
Opinion and Order
Page 23

comment which was not properly objected by defendant Dr. Capre-Febus' counsel as shown by the record. Moreover, no curative instruction was requested by counsel for Dr. Capre-Febus.[9]  The challenged comment was not improper nor inflammatory.  Based on plaintiffs' theory and evidence, plaintiffs' counsel just invited the jury to make a reasonable inference that there was a pact of silence.  In addition, Dr. Capre-Febus fails to show prejudice as to how this isolated comment could have influenced the jury in reaching its verdict or contributed to the award of damages.

## CONCLUSION

In view of the above, plaintiffs "Motion for New Trial and to Amend Judgment under FRCP 59" (Docket No. 195) is **GRANTED IN PART AND DENIED IN PART**, as above discussed.  In addition, defendant Dr. Capre-Febus' "Motion for Judgment as a Matter of Law pursuant to FRCP 50(b) or in the Alternative for New Trial pursuant to FRCP 59(a) with Memorandum in support in compliance with Local Rule 7(a)" (Docket No. 196) is **DENIED**.

Amended Judgment to be entered consistent with this Opinion and Order.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 14th day of February of 2013.

s/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ-RIVE
UNITED STATES MAGISTRATE JUDGE

---

[9] A curative instruction was given to the jury at the initiative of the undersigned, after discussing the same with counsel, in relation to a separate comment made by counsel for Dorado Health in his closing argument as to Fernando's mother referring to Fernando as a baby who was "anormal" (abnormal or not normal) when he was born.